# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | ) ) ) |
| Petitioner, | ) Case No. 10 C 6661 ) |
| v. | ) ) |
| UNION PACIFIC RAILROAD CO., | ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 15, 2010, Petitioner Brotherhood of Locomotive Engineers and Trainmen ("BLET") petitioned the Court pursuant to Section 3, First (q) of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, to review and set aside parts of the National Railroad Adjustment Board, First Division's ("NRAB") Award No. 26700 and Public Law Board No. 7228's ("PLB 7228") Award No. 27.[1] Before the Court is Respondent Union Pacific Railroad Company's ("Union Pacific") and BLET's cross-motions for summary judgment pursuant to Federal Rule of Federal Procedure 56. For the reasons below, the Court grants Union Pacific's motion, denies BLET's motion, and dismisses the lawsuit in its entirety.

## BACKGROUND

Respondent Union Pacific is a railroad engaged in interstate commerce and is a carrier subject to the RLA. (R. 35, Resp.'s Rule 56.1 Stmt. Facts ¶ 1.) Petitioner BLET is a labor

---

[1] "[T]he NRAB is a permanent board consisting of thirty-four members selected by carriers and national labor organizations, while PLBs are temporary panels consisting of two or three members selected by parties to a particular dispute." *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.,* 369 F.Supp.2d 982, 989 (N.D. Ill. 2005).

organization duly authorized to represent Union Pacific's locomotive engineers under the RLA. (*Id*. ¶ 2; R. 30, Pet.'s Rule 56.1 Stmt. Facts ¶ 1.)

Union Pacific and BLET are parties to a collective bargaining agreement ("CBA") that is applicable to Union Pacific's locomotive engineers and includes a System Agreement – Discipline Rule ("Rule") governing all discipline of locomotive engineers. (Resp.'s Stmt. Facts ¶ 3; Pet.'s Stmt. Facts ¶ 3.) The Rule contains the parties' grievance procedures. (Resp.'s Stmt. Facts ¶ 4.) Under the Rule, when a potential disciplinary event occurs, Union Pacific must first conduct a fair and impartial investigation to determine if the engineer is at fault. (*Id*.) Following a hearing, a Union Pacific superintendent decides whether to impose discipline. (*Id.*) This decision must issue within 10 days of the investigation hearing. (*Id*. ¶ 5.) The Rule also provides that, if Union Pacific finds the engineer was not at fault following the investigation hearing or if Union Pacific fails to issue its disciplinary decision within 10 days, Union Pacific must pay the engineer for any time lost. (*Id*. ¶ 6.) If Union Pacific imposes discipline, BLET has the right to appeal that decision and the appeal must be made within 60 days of the superintendent's decision. (*Id*. ¶ 7.) Union Pacific then has 60 days to respond, but if Union Pacific fails to timely respond, Union Pacific must pay the engineer for time lost and clear the engineer's record of the discipline at issue. (*Id*.) If the locomotive engineer or the BLET is unhappy with the results of the appeal, the matter may be taken to arbitration within one year of the denial of the appeal. (*Id*. ¶ 8.)

On January 22, 2004, Union Pacific held a disciplinary investigation hearing to determine whether locomotive engineer E.L. Blann failed to control the movement of his train at the Marion Yard in Memphis, Tennessee on November 3, 2003. (*Id*. ¶ 12; Pet.'s Stmt. Facts ¶ 9.)

Eight days after the hearing, by letter dated January 30, 2004, Union Pacific terminated Blann's employment. (Resp.'s Stmt. Facts ¶ 13; Pet.'s Stmt. Facts ¶ 10.) BLET appealed Union Pacific's decision to discharge Blann by letter dated March 27, 2004. (Resp.'s Stmt. Facts ¶ 14; Pet.'s Stmt. Facts ¶ 11.) Less than 60 days later, Union Pacific denied BLET's appeal by letter dated May 17, 2004. (Resp.'s Stmt. Facts ¶ 15; Pet.'s Stmt. Facts ¶ 12.) BLET submitted the dispute regarding the propriety of Blann's discharge to the NRAB. (Resp.'s Stmt. Facts ¶ 16; Pet.'s Stmt. Facts ¶ 13.)

Following both parties' submissions of arguments and evidence, the NRAB issued Award No. 26700 ("Blann Award") on October 24, 2008. (Resp.'s Stmt. Facts ¶ 17; Pet.'s Stmt. Facts ¶¶ 17, 21.) The Blann Award overturned Blann's dismissal and ordered that he be reinstated and "made whole for lost wages and benefits from the time of his dismissal until he is reinstated." (Resp.'s Stmt. Facts ¶ 18, Pet.'s Stmt. Facts ¶ 23.) The NRAB also stated that Union Pacific was "entitled to offset any outside earnings received by [Blann] for the period we have found [Union Pacific] has a backpay liability." (Pet.'s Stmt. Facts ¶ 24.)

On February 25, 2008, Union Pacific selected locomotive engineer L.L. Johnson for random drug testing and he was unable to produce a urine specimen within the three-hour period allotted by Union Pacific's policy. (Resp.'s Stmt. Facts ¶ 20; Pet.'s Stmt. Facts ¶¶ 26, 27.) On April 23, 2008, Union Pacific conducted a disciplinary investigation into whether it should terminate Johnson's employment for violating its drug and alcohol policy. (Resp.'s Stmt. Facts ¶ 21.) Seven days after the hearing, Union Pacific notified Johnson that it was terminating his employment, and thereafter, BLET appealed Union Pacific's decision to discharge Johnson by letter dated June 18, 2008. (*Id.* ¶¶ 22, 23; Pet.'s Stmt. Facts ¶¶ 30, 31.) Less than 60 days later,

3

Union Pacific denied BLET's appeal by letter dated July 23, 2008. (Resp.'s Stmt. Facts ¶ 24; Pet.'s Stmt. Facts ¶ 32.) BLET submitted a claim regarding the propriety of Johnson's discharge to PLB 7228. (Resp.'s Stmt. Facts ¶ 25.)

Following the parties' submissions of arguments and evidence, the PLB issued Award No. 27 ("Johnson Award") on November 10, 2008. (Resp.'s Stmt. Facts ¶ 26; Pet.'s Stmt. Facts ¶ 33.) The Johnson Award overturned Johnson's dismissal and ordered that he be reinstated to his former position without loss of seniority and made whole for all lost earnings. (Resp.'s Stmt. Facts ¶ 27; Pet.'s Stmt. Facts ¶¶ 40, 41.) The PLB further held that Union Pacific "shall be entitled to offset from its backpay liability any earnings [Johnson] received from the time of his dismissal until he is reinstated." (Pet.'s Stmt. Facts ¶ 42.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

4

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

In connection with their cross-motions for summary judgment, the parties submitted a joint record of the underlying arbitration proceedings before the NRAB and PLB 7228. Under Section 3, First (q) of the RLA, a board's findings "shall be conclusive on the parties." *See* 45 U.S.C. § 153(q); *see also Bh'd of Locomotive Eng'rs v. Atchison, Topeka, & Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir. 1985) (standard of review for decisions by National Railroad Adjustment Board and Public Law Boards are same). The Court concurs in the parties' agreement that the matter is ripe for adjudication by summary judgment because there are no genuine issues of material fact as to what was presented to the NRAB or PLB 7228 or how they conducted their proceedings.

## ANALYSIS

Section 3, First (q) of the RLA provides for judicial review of the Boards' awards. *See* 45 U.S.C. § 153(q). "When parties seek judicial review of an arbitrator's award, the role of the courts, both district and appellate, is extremely limited." *United Food & Commercial Workers, Local 1546 v. Ill. Am. Water Co.*, 569 F.3d 750, 754 n.3 (7th Cir. 2009) (collecting cases). Indeed, judicial review of board decisions is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978); *see also Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R. Co.,* 522 F.3d 746, 757 (7th Cir. 2008) ("[I]t is worth emphasizing that our review of NRAB awards remains exceptionally narrow."). Judicial review of board orders is limited to three specific grounds: (1) failure of the board to comply with the requirements of the Railway Labor Act; (2) failure of the board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.

5

*See Sheehan*, 439 U.S. at 91; 45 U.S.C. § 153(q). "An arbitration award made by the Board may be overturned only if the reviewing court is convinced that [the arbitrator] was not trying to interpret the collective bargaining contract, but that instead he resolved the parties' disputes according to his private notions of justice." *Id*. (internal quotation omitted). "As the Supreme Court has 'emphasized and re-emphasized,' this limited standard of review exists because 'Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board.'" *Am. Train Dispatchers Ass'n v. Norfolk & W. Ry. Co.*, 937 F.2d 365, 366 (7th Cir. 1991) (quoting *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 263, 86 S.Ct. 368, 372, 15 L.Ed.2d 308 (1965)).

"A reviewing court will enforce the arbitrator's award so long as it 'draws its essence from the contract,' even if the court believes that the arbitrator misconstrued its provisions." *United Food & Commercial Workers*, 569 F.3d at 745 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). As the Seventh Circuit has defined, an arbitrator's decision "draws its essence from the contract" if it is "based on the arbitrator's interpretation of the agreement, correct or incorrect though that interpretation may be." *Id*. (citation omitted). "Thus, once we conclude that the arbitrator did in fact interpret the contract, our review is concluded." *Id*. (citing *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 187 (7th Cir. 1985)). Also, federal courts "resolve any reasonable doubt about whether an award draws its essence from the CBA in favor of enforcing the award" and will only vacate an arbitration award when "there is no possible interpretive route to the award." *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315,* 418 F.3d 762, 768 (7th Cir. 2005) (citation omitted).

In its motion for summary judgment, BLET seeks to set aside the part of the NRAB's Award No. 26700 allowing Union Pacific to offset Blann's outside earnings from the backpay awarded and the part of PLB 7228's Award No. 27 that allowed Union Pacific to offset Johnson's outside earnings from the backpay awarded. Specifically, BLET argues that the Boards exceeded their jurisdiction and violated the RLA by: (1) disregarding the plain language of the CBA; (2) changing the CBA and imposing a term Union Pacific was unable to achieve during collective bargaining; (3) relying on inapposite, unrelated arbitral awards; and (4) raising and deciding the offset question without input from the parties. The Court addresses each argument in turn.

## I. Plain Language of the Arbitration Agreement

First, BLET maintains that both the NRAB and PLB 7228 ignored the plain and unambiguous terms of the parties' Discipline Agreement, Section 17, arguing that this section does not permit offsets. Section 17 states in its entirety:

> If, by operation of this agreement or as the result of an arbitration decision, the Carrier is required to pay an engineer who has been disciplined for "time lost," the amount due shall be based upon the average daily earnings of the engineer for the 12 month period (beginning with the first full month) prior to removal from service. The sum of the claimant's earnings during such period shall be divided by 365 to arrive at the average daily earnings to be applied in determining the amount of lost wages, based on the number of days of discipline.

(Pet.'s Stmt. Facts ¶ 5.)

Despite BLET's argument to the contrary, Section 17 does not contain any restrictions or prohibitions of an outside earning offset nor does Section 17 prohibit an arbitrator's ability to fashion an appropriate remedy for lost wages. Instead, Section 17 explains the method of calculating average daily earnings to determine the amount of "time lost" based on the number of

7

days of discipline. The "Note" to Section 17 further supports this interpretation because it states that the twelve-month period mentioned in Section 17 is utilized to determine an employee's average daily earnings. (R. 30, Pet.'s Rule 56.1 Stmt., Ex. 1, at 4.) Accordingly, BLET's argument that both the NRAB and PLB 7882 disregarded the plain language of the CBA is unavailing, especially in light of the fact that federal courts give great deference to an arbitrator's interpretation of a CBA. *See Prate Installations, Inc. v. Chicago Reg'l Council of Carpenters*, 607 F.3d 467, 471 (7th Cir. 2010) (all doubts concerning arbitrator's interpretation of CBA should be resolved in favor of enforcing the award). Therefore, the Court would be hard-pressed to conclude that the Boards' awards did not draw from the essence of the controlling CBA.

## II.     Term Outside of the CBA

Next, BLET maintains that the awards altered the parties' CBA by adding a term to the agreement that Union Pacific was unable to achieve during collective bargaining. In particular, BLET argues that "an arbitration award that adds to an agreement a new term that one party had consistently and unsuccessfully resisted in bargaining is an act well beyond the jurisdiction of an arbitrator whose sole responsibility is to interpret and apply existing agreement terms." (R. 32, Pet. Opening Mem., at 8.) BLET relies upon Seventh Circuit precedent holding that "[w]hen a Board creates a new requirement on its own, it is not interpreting a CBA or following the dictates of the RLA or its regulations" to support its argument. *See Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 757.

Here, the NRAB and PLB 7228 did not create a new requirement that changed the RLA's rules or regulations or the parties' CBA, instead they were fashioning the appropriate remedy under the circumstances and it is well-established that arbitrators have wide discretion in

formulating remedies. *See Prate Installations, Inc.,* 607 F.3d at 474; *see also Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 710 (7th Cir. 1994) ("It is commonplace to leave the arbitrators pretty much at large in the formulation of remedies, just as in the formulation of the principles of contract interpretation."). As the Supreme Court explains, "though the arbitrator's decision must draw its essence from the agreement, he 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.*'" *United Paperworkers Int'l Union,* 484 U.S. at 41 (citation omitted) (emphasis in original). Therefore, the Boards did not err when they drew upon their "informed judgment" in fashioning the appropriate remedies in the Blann and Johnson matters nor did they create a new requirement as BLET suggests. Accordingly, BLET's second argument is without merit.

**III. Reliance on Other Arbitral Awards**

BLET also maintains that the Boards violated the RLA by relying on inapposite, unrelated arbitral awards, including NRAB Award No. 26664. As the record reflects, however, Award No. 26664 involved the same parties and the same contract language that is at issue in the present summary judgment motions. *See Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R.,* No. 3:08–cv–000828–MRJ-CJP, R. 36, 9/3/10 Order (S.D. Ill. 2010). In addition, Award No. 26664 cited other arbitral awards allowing outside earnings offsets. (R. 35, Ex 1, Award No. 26664, at 13.) As such, not only are these arbitral decisions on point, Union Pacific argues that the Boards' consideration of industry practice as exemplified in Award No. 26664 and the other arbitral awards was appropriate. The Court agrees.

Although an arbitrator's award must draw its essence from the parties' CBA, the

9

arbitrator may "look to guidance from many sources," including "the practices of the industry." *See Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union No. 7,* 821 F.2d 390, 397 (7th Cir. 1987) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581-82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). As the Seventh Circuit teaches, "parties to collective bargaining agreements expect labor arbitrators to use their expertise and look to such sources as the law of the shop and prior practices in interpreting contracts." *Chicago Newspaper Publishers' Ass'n,* 821 F.2d at 396-97. Indeed, the Seventh Circuit has explicitly stated that "[a]rbitrators can and do consider the language of other awards in determining the outcome of matters before them." *See Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 754-55. Thus, the Boards' reliance on these other arbitration awards was not in error.

## IV. Due Process Argument

Finally, BLET contends that the Boards exceeded their jurisdiction by raising and deciding the offset question without input from the parties. More specifically, BLET argues that the Boards denied it "the opportunity to be heard at a meaningful time and in a meaningful manner," thereby implicating BLET's due process rights.[2] *See id.* at 751. Although the Supreme Court has yet to determine whether a constitutional right to due process constitutes a basis for

---

[2] Although BLET maintains that it is not bringing a due process challenge in a footnote of its opening brief in support of its summary judgment motion, in its response brief to Union Pacific's motion for summary judgment, BLET argues that it was denied the "opportunity to be heard at a meaningful time and in a meaningful manner" and further asserts that it did not receive "due notice" of the offset issue, thus evoking its due process rights. (R. 32, Pet. Opening Mem., at 5. n.3, R. 38, Pet. Resp. Brief, at 15-16.) Moreover, in the instant Petition, BLET alleged that the "Board denied BLET due process in rendering its award." (R. 1, Petition ¶ 19.)

judicial review of arbitration awards, *see Union Pacific R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment,* 130 S.Ct. 584, 592-93 (2009), the Seventh Circuit has held that due process is a ground for reviewing arbitration awards and has explained that in "the arbitration context, due process is satisfied so long as the arbitrator provided a fundamentally fair hearing, one that meets the minimal requirements of fairness – adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *See Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 751 (citations omitted); *see also Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.,* 446 F.3d 714, 717 (7th Cir. 2006) ("due process is a ground for reviewing an arbitration award"). Moreover, the "standard due process entitlement to an impartial tribunal is relaxed when the tribunal is an arbitral tribunal rather than a court." *United Transp. Union v. Gateway Western Ry. Co.,* 284 F.3d 710, 712-13 (7th Cir. 2002).

BLET argues that the Boards denied it due process because they considered issues that were not properly placed before the Boards in contradiction of NRAB Circular No.1, 29 C.F.R. § 301.5(d),(e) which requires the parties to "clearly and briefly set forth all relevant, argumentative facts, including all documentary evidence submitted in exhibit form, quoting the agreement or rules involved, if any; and all data" in support of their positions. Sections 301.5(d) and (e), however, concern the facts and evidence that the parties must present prior to arbitration – not whether the arbitrators can fashion an appropriate remedy. Moreover, under Section 3, First (j) of the RLA, due process is fulfilled if a party has reasonable notice of the hearing and the opportunity to be present and heard. *See Burlington No. Inc. v. Am. Ry. Supervisors Ass'n,* 527 F.2d 216, 220 (7th Cir. 1975); *Hunter v. Atchison, Topeka & Santa F. Ry. Co.,* 188 F.2d 294, 300 (7th Cir. 1951). From the record, it is abundantly clear that there was adequate notice of the

11

hearing and that BLET presented its arguments and evidence after which the Boards reviewed the parties' submissions and conducted hearings. (*See* R. 25-29, Arbitral Record, Vol. I-V.) In sum, although Union Pacific did not specifically request an outside earnings offset, the Boards' granting of such did not violate BLET's due process rights under the circumstances.

## CONCLUSION

For the these reasons, the Court grants Respondent's Motion for Summary Judgment and denies Petitioner's Motion for Summary Judgment. The Court denies Petitioner's Motion to Strike Portions of Respondent's Local Rule 56.1(b)(3)(B) Response as moot because Petitioner's Local Rule 56.1(a)(3) Statement of Facts ¶¶ 6, 7, 19, 20, 38, and 39 were not relevant to the Court's decision.

**Date:** November 18, 2011

                                                  **ENTERED**

                                                  **AMY J. ST. EVE**
                                                  **United States District Court Judge**